**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JENNIFER MURRAY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **3:26-CV-00612** |
| | : | **(JUDGE MARIANI)** |
| **SCRANTON SCHOOL DISTRICT,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OPINION**

## I. INTRODUCTION & PROCEDURAL HISTORY

Before the Court is a motion to dismiss filed by defendant Scranton School District ("SSD"). (Doc. 3). In short, plaintiff Jennifer Murray's ("Plaintiff") second amended complaint ("SAC") alleges that SSD is liable under 42 U.S.C. § 1983 for depriving her of a protected property interest in continued employment in violation of the Fourteenth Amendment. (Doc. 1-1, ¶¶ 1-51). Although the SAC references the Americans with Disabilities Act ("ADA") and the Family Medical Leave Act ("FMLA"), the SAC alleges only one count for "violation of Fourteenth Amendment Constitutional rights to due process." (*Id.* at 8). For the reasons set forth below, not only does the Court find that Plaintiff woefully fails to allege facts making it plausible that SSD is liable under § 1983, the ADA, the FMLA, or any other federal statute, she also fails to allege facts satisfying the basic elements of the causes of action she purports to bring. Accordingly, SSD's motion to dismiss will be granted and Plaintiff will be granted leave to amend.

Plaintiff sued SSD in the Lackawanna County Court of Common Pleas in July of 2024 and filed the SAC on February 27, 2026. (Doc. 1-1). SSD removed this action to this Court on March 11, 2026, citing 28 U.S.C. §§ 1331, 1441, 1446. (Doc. 1). On March 18, 2026, SSD moved to dismiss this action. The matter is fully briefed and ripe for disposition.

## II. STATEMENT OF FACTS

Plaintiff alleges the following facts in the SAC:

Plaintiff has been a full-time employee of SSD since March 2011. (Doc. 1-1, ¶ 4). Plaintiff "was hired to work as an autistic support teacher" and is "presently employed in two positions providing education for autistic support classroom and separately a life skills classroom." (*Id.*, ¶¶ 5-6). She alleges she "is being paid as an autistic support teacher and is not properly being compensated for teaching two positions as autistic [sic] and also as a life skills teacher."[1] (*Id.*, ¶ 8). Moreover, Plaintiff alleges she has "been denied appropriate wages for accrued sick time." (*Id.*, ¶ 9).

On September 19, 2022, Plaintiff received an email from SSD's Human Resources Director Tim Wolff, "telling her to come to work and complete job responsibilities." (*Id.*, ¶ 10). That same day, Plaintiff alleges she "disclosed her disability and provided a doctor's note evidencing her disability at that time," but Human Resources "failed to make any accommodations pursuant their [sic] interactive process and withheld her paycheck ten

---

1 Plaintiff further alleges that SSD "has combined her classes such that she teaching two classes against the state regulations and in violation of the fair education needed to be presented." (Doc. 1-1, ¶ 7).

days later, failing to provide appropriate disability accommodations." (*Id.*, ¶ 11). Plaintiff met with the Teacher's Union and SSD's principal on September 30, 2022, and Tim Wolff "indicated he was concerned Plaintiff may quit so he withheld her check." (*Id.*, ¶ 12).

On October 27, 2022, November 9, 2022, and January 13, 2023, Plaintiff alleges she submitted FMLA leave requests. (*Id.*, ¶ 13). She alleges SSD did not respond and she "was forced to borrow an additional six days of sick leave inappropriately violating her FMLA rights." (*Id.*). "HR Director, Wolff, finally, after long delay, responded and denied the request on January 30, 2023, multiple weeks after the request had been made in direct violation of the FMLA requirements." (*Id.*, ¶ 14). Plaintiff also "made claims for short-term disability (information provided to the Defendant) because she was suffering with severe anxiety and depression and Obsessive Compulsive Disorder as a result of the hostile and toxic work environment created by the school district." (*Id.*, ¶ 15).

On or about January 16, 2023, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") "and a grievance was filed for retaliation." (*Id.*, ¶¶ 16-17). She alleges her "work hours were changed to shorten her lunch period and extend her workday in retaliation for the filings." (*Id.*, ¶ 16). After Plaintiff filed her complaint and grievance with the PHRC, SSD "engaged in a pattern of delay to prevent the grievance procedure to be [sic] properly followed." (*Id.*, ¶ 19). "Specifically, Plaintiff submitted a third

FMLA request which was not addressed within the five-day requirement under the FMLA, but rather denied over two weeks later in direct violation of the Plaintiff's rights."[2] (*Id.*, ¶ 19).

On or about July 13, 2023, "the Union representation responded indicating that no arbitrator had even yet been assigned by the American Arbitration Association and it was anticipated nothing would happen until late August or early September of 2023." (*Id.*, ¶ 23). On September 14, 2023, Plaintiff "received indication that the Arbitration would be scheduled November 21, 2023," but "in further retaliation for the grievance requests, prior to the arbitration hearing, Plaintiff's lunch period was shortened and her workday was extended." (*Id.*, ¶ 24).

"On or about November 16, 2023, [Plaintiff] received an email indicating that the Arbitration was postponed and the District was interested in settling," but "[u]nfortunately, no further settlement was discussed." (*Id.*, ¶¶ 25-26). "On January 24, 2024, [Plaintiff] received an email from Union representation indicating the District did not provide a response and the Arbitration would be requested to be rescheduled." (*Id.*, ¶ 27). "On or about March 11, 2024, still [sic] no response from the District and the Arbitration had not yet been rescheduled." (*Id.*, ¶ 28).

---

2 "During this time, the Plaintiff had to continuously contact the Union, as she was required to cover multiple classrooms continuously over her caseload numbers and directives to provide instruction for kids from classes K through 21 years of age which was in direct violation of their own IEP requirements and her FMLA requirements." (*Id.*, ¶ 20). Plaintiff alleges that "[n]othing was done until [she] sent a followup email on April 18, 2023, two months later, again requesting Union assistance and grievance procedure to deal with the combined classrooms." (*Id.*, ¶ 21). "Once again, nothing further was done until [Plaintiff] followed up on July 2, 2023 with the Union ask for a status [sic]." (*Id.*, ¶ 22).

On March 26, 2024, Plaintiff "received another email indicating that no settlement conference and/or Arbitration had yet been scheduled and, in fact, the District had no response to moving the grievance procedure forward." (*Id.*, ¶ 29). "The same pattern of delay continued over the next eighteen months through the current date when no Arbitration has yet been scheduled." (*Id.*, ¶ 30). "The Pennsylvania Human Relations Evaluation [sic] continues under [sic] investigation." (*Id.*, ¶ 31). "On or about January 30, 2024, the Pennsylvania Human Relations investigation has now exceeded over one year and, as such, the time for filing a state court action is appropriate." (*Id.*, ¶ 32).

Plaintiff's SAC brings a single Count for "Violation of Fourteenth Amendment Constitutional rights to due process" and alleges the following facts in support of Count I: Plaintiff "was employed by the school district as a tenured teacher pursuant to the Pennsylvania Public School Code and written employment/union contract known as a Collective Bargaining Agreement" ("CBA"). (*Id.*, ¶ 35). At all relevant times, "Plaintiff possessed the constitutionally protected property interest in continued employment with the district by virtue of: Tenure Status under Pennsylvania Public School Code 24 P.S. § 11-1101 *et seq.*; and the terms of Plaintiff's [CBA]; and the past practice of treatment of similar situated employees." (*Id.*, ¶ 36).

Beginning in September of 2022, "the district began to effectively demote the Plaintiff from her employment requiring her to engage in additional work hours and additional work that was not required of similarly situated employees." (*Id.*, ¶ 37). "The adverse

employment action deprived Plaintiff of her property interest in continued employment." (*Id.*, ¶ 38).

Plaintiff alleges that, "prior to the deprivation, the district failed to provide Plaintiff constitutionally adequate procedural safeguards," including but not limited to: "a. adequate written notice of the charges or grounds for discipline; b. a meaningful opportunity to respond prior to deprivation; c. a fair and impartial hearing; d. disclosure of evidence relied upon; e. and/or the opportunity confront or cross-examine witnesses." (*Id.*, ¶ 39). "As specifically referenced above, the district refused to continue to engage in adequate grievance procedures and has caused delay now in excess of three years." (*Id.*, ¶ 40).

In addition, Plaintiff alleges she "submitted multiple FMLA requests for leave as a result of medical disabilities, all of which were ignored and/or denied." (*Id.*, ¶ 41). "As referenced above, the Defendant withheld paychecks after an excused absence and a disclosure of the Plaintiff's disability without any discussion or consideration of accommodations." (*Id.*, ¶ 42). "These above actions and delays have cause significant harm which are intentional and retaliatory resulting in emotional distress, anxiety and financial impact in withheld pay and insufficient pay for additional hours required in work." (*Id.*, ¶ 43). "In fact, because Plaintiff's day was extended by 35 minutes per day, she was caused to work an additional 231.58 hours that have not been paid or accounted for over the course of time from 2022 to present, these additional hours continued to accumulate." (*Id.*, ¶ 44). "Plaintiff has addressed the additional hours on multiple occasions with union

representatives, human resources and administrators in the school district, all of which has fallen on deaf ears." (*Id.*, ¶ 45).

Plaintiff alleges that throughout her career with SSD she "received outstanding evaluations and has been approached on many occasions by school administrators to provide education presentations to student and was further recognized for her professional excellence in 2025 by being awarded the NEPA Teacher of the Month by a local radio station." (*Id.*, ¶ 46). "Unfortunately, as a result of Plaintiff's grievance filings, her evaluation/observation scores plummeted." (*Id.*, ¶ 47). "As referenced above, the district in this matter severely violated the Plaintiff's FMLA and ADA rights. The claims began as retaliation after she disclosed her disabilities and have devolved into a pattern of adverse actions including increased workload, ignored medical accommodations, failure to engage in ADA accommodations and are in direct violation of Plaintiff's FMLA and ADA rights."[3] (*Id.*, ¶ 48).

## III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim

---

3 Plaintiff alleges that the SSD's action "were taken pursuant to official policy practice custom or decision including, but not limited to, the board of directions of the school district and/or the superintended involved in final policy making." (*Id.*, ¶ 49). She also claims that, as a direct and proximate result of SSD's conduct, she suffered damages including loss of salary and benefits, loss of professional reputation, emotional distress, and "other consequential damages." (*Id.*, ¶ 50).

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal

citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting *Iqbal,* 556 U.S. 679).

## IV. ANALYSIS

SSD moves to dismiss the SAC in full. (Doc. 3). SSD first claims that Plaintiff failed to state a plausible § 1983 claim for a violation of her procedural and substantive due process rights by alleging she was demoted by being required to: (1) teach both autistic support and life skills students; and (2) work thirty-five minutes per day longer. (Doc. 5 at 12-19). SSD also claims that Plaintiff failed to state a plausible claim for relief under the FMLA because she failed to allege any facts showing she was eligible for FMLA leave at or near the time of her FMLA requests. (*Id.* at 19-21). Finally, SSD argues that Plaintiff failed to state a plausible claim for violations of the ADA and that she failed to exhaust her administrative remedies for her ADA disability discrimination claim because she did not raise a claim for disability discrimination in her PHRC complaint. (*Id.* at 22-27).

The Court agrees with SSD that the SAC must be dismissed. Specifically, the Court finds the SAC relies on conclusory factual assertions and legal conclusions and comes nowhere close to stating any plausible claims for relief. Accordingly, the Court will grant SSD's motion to dismiss because the SAC fails to state any plausible claims for relief against the SSD.

A. **Plaintiff's Section 1983 Claim Alleging Deprivation of Due Process Fails.**

SSD's principal argument in support of its motion is that the SAC fails to allege any facts showing it deprived Plaintiff of her property interest as a tenured pubic school teacher, and therefore "she was owed no procedural due process rights." (Doc. 5 at 12-13). Although Plaintiff filed a brief in opposition, her brief admittedly "does not address the claims for violation fo [sic] the Fourteenth Amendment claims [sic]." (Doc. 7 at 5). Instead, Plaintiff's only argument in opposition appears to be that she "has satisfied her requirements under the grievance procedure as the defendants is engaged in a blockade that has prohibited that matter to proceed and, as such, must proceed in court herein." (Doc. 7 at 13-17). Because the Court agrees with SSD that Plaintiff fails to plausibly allege that SSD deprived her of a property interest as a tenured public school teacher by requiring her to teach both autistic support and life skills students and accordingly work thirty-five minutes per day longer, SSD's motion to dismiss will be granted.

The Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The Fourteenth Amendment places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause." *Memphis Light*, *Gas*, *& Water Div. v. Craft*, 436 U.S. 1, 9 (1978). "At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and a meaningful opportunity to be heard." *Abbott v.*

*Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998). "Due Process is flexible and calls for such procedural protection as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 324 (1976).

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law."[4] *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (internal citation and quotation marks omitted). Thus, "[a] procedural due process claim is subject to a two-stage inquiry: (1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute due process of law." *Schmidt v. Creedon,* 639 F.3d 587, 595 (3d Cir. 2011) (internal citation and quotation marks omitted).

State law creates property rights which are protected by the Fourteenth Amendment. *See Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions

---

4 While SSD argues the SAC should be dismissed to the extent it raises a substantive due process claim (Doc. 5 at 13), the Court does not read the SAC to bring a claim alleging deprivation of her substantive due process rights. In any event, the SAC fails to state a plausible substantive due process claim. *See Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) ("In order to state a claim under the Fourteenth Amendment's substantive due process clause in this context, the Plaintiff must allege that it: (1) had a property interest protected by the Fourteenth Amendment's substantive due process clause; and (2) was deprived of that interest by local officials' behavior that shocks the conscience.").

are defined by existing rules or understandings that stem from an independent source such as state law rules.").

Plaintiff alleges she has a constitutionally protected property interest in her continued employment that is protected by the due process clause. (SAC, ¶ 36). No one disputes that, as tenured public school teacher, Plaintiff has a protected property interest in her continued employment under Pennsylvania law and is entitled to constitutionally adequate due process. *See* 24 P.S. § 5-514 (Removal of officers, employees, etc.). However, the facts alleged in the SAC do not allege a deprivation of a constitutionally protected property interest without due process.

Plaintiff fails to plausibly allege that she had a property interest in teaching only autistic support students and in her prior work schedule that is protected by Fourteenth Amendment. Moreover, she does not allege any adverse employment action by SSD, including discharge, suspension, or any other discipline. Rather, she alleges SSD "effectively demoted," her and deprived her of a protected property interest in continued employment by requiring her to engage in additional work and hours all resulting in an "adverse employment action." (Doc. 1-1, ¶¶ 37-38). Simply put, the Court finds that Plaintiff fails to plausibly allege facts showing she had a constitutionally protected property interest of which SSD deprived her without due process of law. Plaintiff's allegations that SSD required her to work thirty-five minutes more per day to teach an additional classroom of life skill students resulting in her "effective demotion" without notice and opportunity to be heard

does not state a plausible claim for deprivation of a property interest protected by the Fourteenth Amendment.

Plaintiff also alleges she has a protected property interest based on the terms of her CBA. "An employee may also have a constitutionally protected property interest based on the terms of a collective bargaining agreement." *Suniaga v. Downingtown Area Sch. Dist.*, 765 F. Supp. 3d 413, 424 (E.D. Pa. 2025) (citing *Unger v. Nat'l Residents Matching Programs*, 928 F.2d 1392, 1397 (3d Cir. 1991)). For example, "[a]n employee contract with a 'just cause' provision triggers due process protection." *Id.* at 424 (citing *Mancini v. Northampton Cty.*, 863 F.3d 308, 316 (3d Cir. 2016).

A review of the SAC shows that Plaintiff fails to plausibly allege facts from which the Court can reasonably infer that the terms of her CBA created a protected property interest warranting constitutional protection in this context. In fact, Plaintiff only briefly refers to the CBA and does so in the most conclusory fashion. (Doc. 1-1, ¶¶ 35-37). Her most detailed allegation regarding the terms of the CBA is a legal conclusion that she had a protected property interest pursuant "to the terms of the Plaintiff's Collective Bargaining Agreement." (*Id.*, ¶ 37). Although Plaintiff references the CBA throughout her brief in opposition (Doc. 7 at 13-18) and attempts to add new factual allegations, she cannot amend the SAC through arguments in a brief in opposition to a motion to dismiss.[5] *See Pennsylvania ex rel.*

---

5 SSD attached the CBA to its brief in support of its motion to dismiss. (Doc. 5-2). The Court will not rely on the CBA at this time because it is not necessary for resolution of SSD's motion.

*Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Moreover, she alleges no facts from which one could infer that SSD violated her constitutionally protected rights under the CBA by requiring her to work thirty-five minutes more a day to teach an additional classroom of life skill students without notice and an opportunity to be heard. Nor does she allege any adverse employment action taken by SSD. Accordingly, SSD's motion to dismiss will be granted and Count I will be dismissed. Plaintiff will be granted leave to amend.

### B. Even if the SAC Could be Construed to Bring FMLA and ADA Claims, Those Claims Will be Dismissed.

The SAC brings a single count for "Violation of Fourteenth Amendment Constitutional rights to due process." (Doc. 1-1 at 8). Although the Court does not consider the SAC to raise claims under the FMLA or the ADA, *see* Fed. R. Civ. P. 10(b), the Court will briefly address the FMLA and ADA claims because SSD moved to dismiss both claims.[6]

---

[6] Plaintiff lumps together her § 1983, FMLA, and ADA claims in a single conclusory count in the SAC. Federal Rule of Civil Procedure 10(b) provides "[a] party must state its claims or defenses in numbered paragraphs, ***each limited as far as practicable to a single set of circumstances***. A later pleading may refer by number to a paragraph in an earlier pleading. ***If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense***." Fed. R. Civ. P. 10(b) (emphasis added). Although Rule 10(b) is not the basis of the Court's dismissal, to the extent that Plaintiff wishes to amend her complaint the Court will require her to plead her causes of action in separate counts to promote clarity for the Court and SSD. *See Jefferson v. Abington Jefferson Hosp.*, 2025 WL 1194479, at *3 (E.D. Pa. Apr. 24, 2025) (dismissing complaint without prejudice for failure to comply with Rule 10(b) where "the Court and Defendants are left to mine the complaint for relevant factual allegations and speculate about how such allegations connect to each count").

### i. <u>Plaintiff's FMLA Claims Fail</u>.

SSD argues that Plaintiff failed to state any plausible claim for relief under the FMLA because she failed to allege any facts showing that she was eligible for FMLA leave at or near the time of her FMLA requests. (Doc. 5 at 19-21). Like Plaintiff's arguments in opposition to SSD's motion to dismiss her Fourteenth Amendment claims, Plaintiff does not bother to address SSD's argument that the SAC fails to plausibly allege Plaintiff was eligible for FMLA leave at or near the time she sought leave.[7] Thus, to the extent the SAC alleges a claim under the FMLA, it will be dismissed with leave to amend.

The FMLA provides "that eligible employees are entitled to 12 workweeks of leave during any 12-month period if the employee has a 'serious health condition' that make the employee unable to perform the functions of her position." *Hansler v. Lehigh Valley Hospital Network*, 798 F.3d 149, 152 (3d Cir. 2015) (citing 29 U.S.C. § 2612(a)(1)(D)). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care

---

7 Plaintiff argues in opposition—without any citation to case law or the SAC—that:

> Plaintiff's Second Amended Complaint details her denial of FMLA time even though similarly situated were granted the same. Further, as evidenced in her Complaint, she was required to an [sic] additional 35 minutes every single day that similarly situated employes do not have to. Additionally, certain other teachers had classrooms over their caseload numbers and were compensated for the [sic] while the Plaintiff was not. This amounts to thousands of hours extra time for which she unpaid. Further, she has been denied her time requested for FMLA [sic] given her ongoing disability and was even denied pay for periods of time that she actually worked.

(Doc. 7 at 16). Key elements of a cause of action under the FMLA are missing and the Court is left to speculate as to what Plaintiff's FMLA claims are based on.

facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The FMLA provides that employers may not "interfere with, restrain, or deny the exercise or attempt to exercise" rights granted under the FMLA. 29 U.S.C. § 2615(a)(1).

To state a claim for FMLA interference Plaintiff must establish: "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) that plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA."[8] *Capps. v. Mondelez Glob., LLC*, 847 F.3d 144, 155 (3d Cir. 2017) (internal citation and quotation marks omitted).

Here, the Court agrees with SSD that Plaintiff fails to plausibly allege facts showing she was entitled to FMLA leave at or near the time of her FMLA requests. Plaintiff alleges she sought and was denied FMLA leave on October 27, 2022, November 9, 2022, and January 13, 2023. (Doc. 1-1, ¶¶ 13, 41) Although Plaintiff alleges that on September 19, 2022, she "disclosed her disability and provided a doctor's note evidencing her disability at that time," (SAC, ¶ 11), she alleges no facts from which one could infer that she had a

---

[8] To succeed on a FMLA retaliation claim it is Plaintiff's burden to establish: (1) she invoked her right to FMLA qualifying leave, (2) she suffered an adverse employment action, and (3) the adverse action was casually related to her invocation of rights." *Budhun v. Reading Hosp. & Med Ctr.*, 765 F.3d 245, 257 (3d Cir. 2014). To the extent the SAC alleges a claim for FMLA retaliation, it fails because Plaintiff does not plausibly allege she invoked her right to FMLA qualifying leave or suffered an adverse employment action casually related to her invocation of that right.

serious health condition or that she was otherwise eligible for FMLA leave at the time she alleges she requested and was denied leave.

As noted, a "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). While Plaintiff alleges she was "suffering with severe anxiety and depression and Obsessive Compulsive Disorder as a result of the hostile and toxic work environment created by the school district," (*Id.*, ¶ 15), she does not plausibly allege facts from which one could infer a "serious health condition." Specifically, Plaintiff does not allege—plausibly or otherwise— that her mental conditions required the need for "continuing treatment by a health care provider." Nor Plaintiff does allege her conditions required "inpatient care in a hospital, hospice, or residential medical care facility." Moreover, the SAC contains conclusory factual assertions regarding Plaintiff's "disabilities," not her "serious health condition," and contains legal conclusion that are not entitled to the presumption of the truth. (*Id.*, ¶¶ 11-15, 19-22, 41, 48). Accordingly, SSD's motion to dismiss Plaintiff's FMLA claim will be granted, and Plaintiff will be granted leave to amend.

**ii. <u>Plaintiff's ADA Claims Fail</u>.**

Finally, SSD argues that Plaintiff failed to state a plausible claim for violations of the ADA and that she failed to exhaust her administrative remedies for her ADA disability discrimination claim because she did not raise a claim for disability discrimination in her

PHRC complaint. (*Id.* at 22-27). Plaintiff's opposition brief, again, does not address SSD's arguments in support of its motion and does not even reference the ADA. Instead, Plaintiff appears to conflate her purported ADA claim with her § 1983 claim alleging deprivation of due process, asserting:

> Defendant's further argument that Plaintiff failed to state a claim for violation of the Fourteenth Amendment Due Process Rights alleging that she failed to use the administrative remedies and failed to exhaust the administrative procedure is misplaced. As clearly evidenced above, the Defendants have done nothing short of setting up a blockade and refusing to allow the grievance procedure to be completed. Plaintiff's request for an arbitration has been pending in excess of two years. As such, Plaintiff has no other remedy but to proceed in court. Further, the delay has caused extreme hardship that is necessary to be evaluated in this Court.

(Doc. 7 at 16-17). Her brief in opposition further argues that she stated a claim for Title VII discrimination and retaliation.[9] (*Id.* at 14-15).

"The ADA prohibits discrimination against qualified individuals who suffer a disability." *Emory v. AstraZeneca Pharm., L.P.*, 401 F.3d 174, 179 (3d Cir. 2005). "To prove disability discrimination, plaintiffs must demonstrate: (i) they have a disability within the meaning of the ADA; (ii) they are otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer; and (iii) they have suffered an otherwise adverse employment decision as a result of discrimination."[10] *Morgan*

---

9 Although the Plaintiff repeatedly references Title VII and the PHRA in her brief in opposition (Doc. 7 at 15-16), the SAC does not reference either statute. Nor does it allege any facts stating a plausible claim for relief under Title VII or the PHRA.

10 "A qualified individual with a disability is defined as person 'with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 326 (3d Cir. 2003) (citations

*v. Allison Crane & Rigging, LLC*, 114 F.4th 214, 220-21 (3d Cir. 2024) (internal citation and quotation marks omitted).

Here, the SAC fails at each step because Plaintiff alleges no facts from which one could infer that she has a disability within the meaning of the ADA, is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation by the SSD, or suffered an adverse employment decision as a result of discrimination. The Court declines to address SSD's exhaustion arguments at this time. Accordingly, SSD's motion to dismiss will be granted in full and Plaintiff is granted leave to amend.[11]

omitted). "In order to establish that a plaintiff is 'qualified' under the ADA, the employee must show that he/she 'satisfies the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires.'" *Id.* (quoting *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001)). "If the plaintiff is able to make that showing, he/she must then establish that with or without reasonable accommodation, he/she can perform the essential functions of the position held or sought." *Id.*

[11] To the extent the SAC alleges additional ADA claims, those claims will be dismissed because the SAC alleges insufficient factual content and does not state any plausible claim for relief under the ADA. "A plaintiff bringing an ADA failure-to-accommodate claim must establish: '(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated.'" *Capps*, 847 F.3d at 156 (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)). "Section 503 of the ADA makes it 'unlawful to . . . interfere with any individual in the exercise or enjoyment of' rights under the ADA." *Piotrowski v. Signature Collison Ctrs., LLC*, 2021 WL 4709721, at *2 (E.D. Pa. Oct. 8, 2011) (citing 42 U.S.C. § 12203(b)). "To establish a claim for unlawful retaliation pursuant to the ADA, 'a plaintiff must show (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" *Allen v. Lackawanna Cnty. Bd. of Commissioners*, 2022 WL 1110323, at *6 (M.D. Pa. Apr. 13, 2022) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)).

## V. CONCLUSION

For the foregoing reasons, the Court will grant SSD's motion to dismiss. Plaintiff will be granted leave to amend and must file an amended complaint within twenty-one (21) days of the date of the accompanying Order. A separate Order follows.

Robert D. Mariani
United States District Judge